United States District Court
Southern District of Texas
**ENTERED**
January 13, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOMMY CULPEPPER and JOSE RESENDEZ, Individually and for Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. H-21-0318 |
| AMEC FOSTER WHEELER KAMTECH, INC., C2 LOGISTIC SOLUTIONS, LLC, and JAMES CLARK, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Defendant Amec Foster Wheeler Kamtech, Inc.'s pending Motion to Dismiss Plaintiff's First Amended Complaint (Document No. 39)[1] has been referred to the undersigned Magistrate Judge for a Memorandum and Recommendation. Having considered the motion, the response in opposition, the additional briefing, the allegations in Plaintiffs' First Amended Complaint (Document No. 23), the parties' evidentiary submissions, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion to Dismiss be DENIED.

### I.     Background

This is a Fair Labor Standards Act case brought by two employees of Defendant C2 Logistics, LLC ("C2"), on behalf of themselves and others similarly situated, who allege that they

---

[1] The Motion to Dismiss (Document No. 19), antecedently-filed by Wood Group Management Services, Inc., who was dropped as a defendant in Plaintiffs' First Amended Complaint, is DENIED as MOOT.

were not paid their regular pay or their overtime pay for the last four to ten weeks of their employment with C2, which was performing work for Defendant Amec Foster Wheeler Kamtech, Inc. ("Kamtech") on wind turbine projects in Kansas, Wyoming and Oregon.  Plaintiffs allege that C2 and Kamtech were joint employers for purposes of the FLSA and that when C2 and Kamtech had a "falling out" in October/November 2020, Plaintiffs were not paid any wages for a period of time between October and November 2020.  While Plaintiffs were, following C2's termination from the project, hired and paid by Kamtech directly, neither C2 nor Kamtech has paid them the back wages they are due for the period of time they worked in October and November 2020.  *See* First Amended Complaint (Document No. 23) at 4 (Plaintiffs "worked for Defendants during the four to ten weeks preceding the direct[ ] hiring by [Kamtech] without compensation;" "Defendants failed to pay Plaintiffs any wages during the final weeks prior to [Kamtech] hiring Plaintiffs directly.").

Defendant Kamtech, which Plaintiffs allege is "US based subsidiary of a multinational energy service company, and which Plaintiffs allege "contracts with Texas businesses and employs Texas residen[ts], and maintains a place of business of Texas, namely 17325 Park Row Suite 500, Houston, Texas 77084," has filed a Rule 12(b)(2) Motion to Dismiss, alleging that the Court does not have personal jurisdiction over it.  According to Kamtech, the Court does not have general jurisdiction over it because it is neither incorporated nor has its principal place of business in Texas, and does not otherwise have continuous and systematic contacts with Texas.  As for specific jurisdiction, Kamtech maintains that Plaintiffs' claims in this case do not arise out of or relate to Kamtech's contacts with Texas - "they stem from work performed [by Plaintiffs] in Kansas, Wyoming and Oregon."  Motion to Dismiss (Document No. 39) at 9.

2

## II.     Personal Jurisdiction Standards

A federal court may exercise jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.  *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993).  Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements.  *Id.*

Due process requirements for exercising personal jurisdiction over a nonresident have been defined by the United States Supreme Court in a familiar body of case law, and have been more recently explained and applied by the Fifth Circuit in *Monkton Insurance Services v. Ritter*, 768 F.3d 429 (5th Cir. 2014).  The due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 66 S. Ct. 154, 158 (1945).  A minimum contacts analysis involves more than counting the nonresident's contacts with the forum.  *See Stuart v. Spademan*, 772 F.2d 1185, 1189-90 (5th Cir. 1985).  Rather, the Court "must determine whether the nonresident has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (citation omitted).

Two types of personal jurisdiction are recognized: "specific" and "general."  General jurisdiction exists when "the defendant's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'"  *Monkton*, 768 F.3d at 432 (quoting

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 28446, 2851 (2011)).  Specific

jurisdiction, in contrast, exists when the cause of action relates to or arises out of the defendant's

contacts with the forum.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868, 1872

n.8 (1984).

    A three-part inquiry is used to determine whether specific jurisdiction exists.  Under that

three-part analysis, the Court must determine:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether
> it purposely directed its activities toward the forum state or purposely availed itself
> of the privileges of conducting activities there; (2) whether the plaintiff's cause of
> action arises out of or results from the defendant's forum-related contacts; and (3)
> whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton*, 768 F.3d at 433 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th

Cir. 2006)).  As for general jurisdiction over a corporation, it exists where the defendant's contacts

are so "continuous and systematic" that the defendant is "essentially at home in the forum State."

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A.

v. Brown*, 564 U.S. 915, 919 (2011).  With respect to general jurisdiction over a corporation, it exists

in the "place of incorporation" or  where the corporation maintains its "primary place of business."

*Jones v. Artists Rights Enforcement Corp.*, 789 F. App'x 423, 425 (5th Cir. 2019); *see also Wartsila

N. Am., Inc. v. Int'l Ctr. for Dispute Resolution*, 387 F. Supp. 3d 715, 730 (S.D. Tex. 2018) ("under

*Daimler*, the court may not exercise general jurisdiction in a state in which a corporation is not either

incorporated or has its principal place of business unless it is an exceptional case where the

corporation's contacts are so continuous and systematic as to render the corporation essentially at

home in that state").

    A plaintiff asserting a cause of action against a non-resident defendant bears the burden of

presenting a *prima facie* case of personal jurisdiction. *Monkton.* 768 F.3d at 431; *Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990). A plaintiff may present a *prima facie* case by referring to uncontroverted allegations in the pleadings and/or and producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. *WNS, Inc. v. Farrow*, 884 F.2d 200, 204 (5th Cir. 1989). Any uncontroverted allegations in the plaintiff's pleading are to be taken as true, and any conflicts between the facts contained in the parties' affidavits must be construed in the plaintiff's favor. *Monkton*, 768 F.3d at 431 (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

## III.    Discussion

Kamtech is incorporated in Delaware. It claims in this case that it its principal place of business is in Georgia. Declaration of Ramsey Baker (Document No. 39-3). These facts do not appear to be in direct dispute. Instead, Plaintiffs maintain that Kamtech has represented in other litigation that it has a "principal" office in Houston, Texas, and that such a representation equates to an admission that Kamtech's principal place of business is in Texas. For example, in a lawsuit Kamtech filed against C2 in Harris County, Texas, Kamtech alleged that it is "authorized to do business in Texas and [is] located at 17325 Park Row Suite 500, Houston, Texas 77084" (Document No. 47-3 at 1). In addition, in a lawsuit filed by Quality Mat Company against Kamtech in Jefferson County, Texas, Kamtech represented that its principal office in Texas is in Harris County, Texas (Document No. 47-1 at 2). Plaintiffs argue that these pleading representations by Kamtech are inconsistent with its position that its principal place of business is in Georgia, and such inconsistencies should be construed in Plaintiffs' favor. Plaintiffs' argument is unavailing and

5

cannot provide a basis for general jurisdiction in this case.

The two pleadings Plaintiffs rely on did not contain direct representation by Kamtech that its "principal place of business" is in Harris County Texas; all Kamtech represented in those other two lawsuits was that its principal "office" *in Texas* is in Houston (Harris County).  That representation, coupled with the vague allegations in this case that Kamtech "contracts with Texas businesses and employs Texas residen[ts] and maintains a place of business in Texas," is insufficient for a showing that Kamtech has continuous and systematic contacts with Texas.

As for specific jurisdiction, Plaintiffs' uncontroverted allegations in its First Amended Complaint, coupled with Kamtech's relationship with C2 and its litigation against C2 in Harris County, Texas about the wind turbine work performed by C2 and its employees in Kansas, Wyoming and Oregon, do provide a relational nexus between Kamtech's contacts in Texas and Plaintiffs' claims in this case.  Plaintiffs allege in their First Amended Complaint that they were employees of C2, performing work for, and at the direction of, Kamtech in Kansas, Wyoming and Oregon.  First Amended Collective Complaint (Document No. 23) at 1-2, 5, 6, 7, 8, 9.  In late 2020, C2 and Kamtech had a falling out and C2 was terminated.  *Id.* at 2, 10.  It was in and around that time that Plaintiffs allege they were not paid.  *Id.*  Insofar as Plaintiffs' jobs, and their wages, were based on the relationship between C2 and Kamtech, that relationship and Kamtech's litigation related thereto provides sufficient relational contacts by Kamtech to Texas upon which to base specific jurisdiction.

According to the allegations in the lawsuit Kamtech filed against C2 in Harris County Texas, "C2 was [ ] contractually obligated for promptly paying all of its subcontractors and suppliers," and that if "C2 failed to pay its subcontractors and suppliers, then [Kamtech] could take such steps it

deemed necessary to ensure that C2's subcontractors and suppliers were paid." *See* Verified Original Petition in Amec Foster Wheeler Kamtech, Inc. v. C2 Logistics Solutions, LLC, Harris County, Texas (Document No. 47-3 at 2). Kamtech further alleged in that lawsuit that "C2 breached the contracts [with Kamtech] by abandoning the Projects and failing to pay its own subcontractors and suppliers." *Id.* at 4. Moreover, in correspondence between Kamtech and C2 prior to the filing of that lawsuit, Kamtech alleged that C2 was in breach of their agreements by virtue of C2 "repeatedly fail[ing] to pay its labor forces." (Document No. 47-5 at 1). While Kamtech argues that its disputes with C2, which formed the basis of the lawsuit Kamtech filed against C2 in Harris County, Texas, have nothing to do with Plaintiffs' wage claims herein, the allegations in that Harris County case belie Kamtech's allegations. Moreover, Plaintiffs clearly allege in this case that C2 and Kamtech were joint employers, with that joint employer relationship being based, in whole or in part, on the relationship between C2 and Kamtech vis-a-vis the wind turbine project on which Plaintiffs worked, and upon which Kamtech has sued C2 in Harris County, Texas.

The three requirements for specific jurisdiction are met on this record. First, Kamtech has, as a result of the office it has here, as well as its contacts and contacts with Texas-based businesses, including C2, minium contacts with Texas. Second, Plaintiffs' FLSA claims can be viewed as arising out of Kamtech's contacts with Texas. In that regard, Kamtech contracted with C2, a Texas resident, on the project, and C2 provided the labor for the project, including Plaintiffs, with both of the named Plaintiffs in this case being Texas residents. The wage claims at issue herein are therefore a product of, and therefore resulted from, Kamtech's contact and contract(s) with C2 in Texas. Finally, given that Kamtech sued C2 in Harris County, Texas, exercising personal jurisdiction over it in this related suit would be both fair and reasonable.

7

One case, cited to and relied upon by Kamtech, is worthy of note.  In *Aviles v. Kunkle*, 978 F.2d 201, 204-05 (5th Cir. 1992), personal jurisdiction was found not to exist over defendant farmers in Ohio, who employed seasonal farm workers, located in Texas, to work on farms in Ohio. Kamtech argues that *Aviles* is just like the situation here with Plaintiffs working outside of Texas for Defendants.  But, Kamtech is mistaken about the breadth of *Aviles* and its applicability given the evidence in this case that Kamtech itself filed a lawsuit in the forum to which it was objecting.  That was not the case in *Aviles* and *Aviles* is distinguishable on that basis alone.

Based on the foregoing, and the conclusion that Kamtech's contacts with C2 and its ongoing litigation against C2 in this forum provide sufficient contacts for the Court's exercise of specific jurisdiction over Kamtech, Kamtech's Motion to Dismiss should be denied.

## IV.     Conclusion and Recommendation

Based on the foregoing, and the conclusion that the Court does have personal jurisdiction over Defendant Amec Foster Wheeler Kamtech, Inc., the Magistrate Judge RECOMMENDS that its pending Motion to Dismiss Plaintiff's First Amended Complaint (Document No. 39) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED.R.CIV.P. 72(b), to the recommendation made herein relative to Defendant's Motion to Dismiss.    Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc).  Moreover, absent plain error,

failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 13th day of January, 2022.

Frances H. Stacy
United States Magistrate Judge